## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

Gary Legrande Wise,                )
                                   )
        Plaintiff,                 )
                                   )        Civil Action No. 6:13-2712-RMG
    vs.                            )
                                   )
Carolyn W. Colvin, Commissioner    )
of Social Security,                )        **ORDER**
                                   )
        Defendant.                 )
_____)

Plaintiff brought this action *pro se* pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)

seeking judicial review of the final decision of the Commissioner of Social Security denying his

claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In

accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a

United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and

Recommendation ("R & R") on November 24, 2014, recommending that the Commissioner's

decision be affirmed. (Dkt. No. 42). Plaintiff was provided notice of his right to file written

objections to the R & R within 14 days of service and advised that a failure to file objections may

result in limited review by the District Court and a waiver of the right to appeal. (Dkt. No. 42 at

17). No party filed timely objections to the R & R.

The Court, mindful of the Plaintiff's *pro se* status, has made a review of the record, the

decision of the Administrative Law Judge ("ALJ") and the Magistrate Judge to determine if there

is any clear error on the face of the record. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d

310 (4th Cir. 2005). That review has produced clear evidence of the ALJ's failure to properly

-1-

apply the requirements of the Treating Physician Rule, 20 C.F.R. § 404.1527, and the failure of the Appeals Council or any other agency fact finder to review, weigh and reconcile the new and material responses of one of Plaintiff's treating physicians, Dr. James Elmore, to an impairment questionnaire submitted after the ALJ's decision, as mandated by the *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011). As further set forth below, the decision of the Commissioner is reversed and remanded for further agency review consistent with this order.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971).

-2-

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1527(b). This includes the duty to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh *all* medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of

-3-

treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996). Further, since the Commissioner recognizes that the non-examining expert has "no treating or examining relationship" with the claimant, she pledges to consider their supporting explanations for their opinions and "the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and examining sources." § 404.1527(c)(3).

A claimant may offer relevant evidence to support his or her disability claim throughout the administrative process. Even after the Administrative Law Judge ("ALJ") renders a decision, a claimant who has sought review from the Appeals Council may submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. §§ 404.968, 404.970(b). The new evidence offered to the Appeals Council is then made part of the record. The Social Security Regulations do not require the Appeals Council expressly to weigh the newly produced evidence and reconcile it with previously produced conflicting evidence before the ALJ. Instead, the regulations require only that the Appeals Council make a decision whether to review the case, and, if it chooses not to grant review, there is no express requirement that the Appeals Council weigh and reconcile the newly produced evidence. *Meyer v. Astrue*, 662 F.3d 700, 705-06 (4th Cir. 2011).

As the Fourth Circuit addressed in *Meyer*, the difficulty arises under this regulatory scheme on review by the courts where the newly produced evidence is made part of the record for purposes of substantial evidence review but the evidence has not been weighed by the fact finder or reconciled with other relevant evidence. *Meyer* held that as long as the newly presented evidence is uncontroverted in the record or all the evidence is "one-sided," a reviewing court has

-4-

no difficulty determining whether there is substantial evidence to support the Commissioner's decision. *Id.* at 707. However, where the "other record evidence credited by the ALJ conflicts with the new evidence," there is a need to remand the matter to the fact finder to "reconcile that [new] evidence with the conflicting and supporting evidence in the record." *Id.* Remand is necessary because "[a]ssessing the probative value of the competing evidence is quintessentially the role of the fact finder." *Id.*

One issue that commonly arises in these *Meyer*-related cases is whether medical evidence produced after the ALJ's decision should be considered in reviewing the Commissioner's decision denying disability or whether the claimant should be required to file a new disability claim. The Fourth Circuit recently provided considerable guidance regarding this issue in *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337 (4th Cir. 2012). *Bird* held that the newly produced medical evidence, outside the relevant time period of the claim, should be considered if there is evidence of linkage between the earlier relevant medical evidence and the newly produced medical evidence that may be "reflective of a possible earlier and progressive degeneration." *Id.* at 341. The newly produced evidence need not expressly state a retrospective diagnosis.

## Factual Background

Plaintiff advances claims for disability under SSI and the widower's insurance benefits, asserting an onset date of August 20, 2002.[1] Plaintiff's initially asserted that his primary problems related to bilateral lower extremity pain, coronary artery disease, diabetes and depression. Transcript of Record ("Tr.") 375-80, 408-12. Plaintiff's medical records were

---

[1] The record indicates that Plaintiff was incarcerated from July 2002 until February 2010. A person incarcerated is ineligible for disability benefits during the period of his incarceration. 20 C.F.R. § 416.1339(a).

-5-

reviewed by non-examining and non-treating physicians in early to mid 2011; these physicians recognized a number of Plaintiff's impairments but concluded he retained the residual functional capacity to sit or stand six hours in an eight hour day and to lift up to ten pounds frequently. Tr. 446-53, 569-76, 581. These opinions, for all practical purposes, limited a residual functional capacity to perform light work. Plaintiff offered brief statements by his treating physicians, all Veteran Administration ("VA") providers, prepared in July and August 2011, indicating that he had significant impairments, most notably with peripheral vascular disease in his lower extremities, that would currently make full time employment difficult. Tr. 579, 580, 581. Plaintiff subsequently underwent bilateral vascular reconstruction surgery in September 2011 and March 2012 to address his chronic lower extremity pain associated with his peripheral vascular disease. Tr. 703, 705.

Subsequent to the evaluations performed by the non-examining physicians and Plaintiff's treating physicians in early to mid 2011, Plaintiff was involved in a motor vehicle accident in September 2011, after which he complained of severe lower back pain. Tr. 1086-89. A lumbar spine MRI was conducted on December 30, 2011, which demonstrated "severe degenerative disk disease" at the L5-S1 level that included disk protrusion that was "compressing the proximal aspect of the left S1 nerve root and minimally compressing the anterior surface of the thecal sac." Tr. 582. The MRI report concluded that the degenerative stenosis "involves the L5-S1 intervertebral nerve root canals bilaterally." *Id.* An evaluation conducted in January 2012 noted that Plaintiff had not complained of severe low back pain before the September 2011 accident and documented complaints of radiating pain down his right leg to his feet and positive straight leg raises. Tr. 625, 628.

-6-

Plaintiff subsequently was treated in the VA's pain clinic and with physical therapy. Plaintiff was able to obtain some improvement in his pain symptoms with physical therapy and by use of a TENS unit, but he nonetheless continued to complain of significant pain and a reduced capacity to ambulate. Tr. 818, 819, 824, 830, 966, 986, 994 1022, 1078. He was noted to require a cane to ambulate and when his back symptoms worsened he reported he would use a walker. Tr. 994, 1078.

One of Plaintiff's treating physicians at the VA, Dr. James Elmore, a board certified internist, completed a one-page questionnaire on September 6, 2012, concerning the claimant's functional limitations. He indicated that Plaintiff's impairments included lumbar stenosis, coronary artery diseases, PTSD and diabetes. Tr. 1083. These conditions, Dr. James opined, were moderate to severe and prevented Plaintiff from engaging in "prolonged standing" and sitting greater than two to four hours. *Id.* He also indicated that these limitations limited Plaintiff's ability to keep pace and that, in his opinion, the claimant was then unable to engage in substantial gainful activity. *Id.* Dr. James' opinion was the only one in the record provided by a physician subsequent to the September 2011 motor vehicle accident and the December 2011 lumbar MRI and was, consequently, the only opinion that addressed the onset of Plaintiff's lower back pain and lumbar pathology. Dr. James' opinions, if adopted, would limit Plaintiff to either sedentary or less than sedentary work, which, with his age above 50, would generally require a finding of disability. SSR 96-9P, 1996 WL 374185 (1996).

An administrative hearing was conducted in this matter on January 23, 2013, during which the claimant and a vocational expert testified. The ALJ issued his decision on March 6, 2013, finding that Plaintiff's severe impairments included a prior coronary artery bypass

-7-

procedure, coronary artery disease with right lower extremity claudication and lumbar spine degenerative stenosis. Tr. 14. The ALJ concluded that Plaintiff's impairments did not satisfy any Listing and he retained the residual functional capacity for light work. Tr. 22-26. Based on these findings, the ALJ determined that Plaintiff was not disabled under the Social Security Act.

In reaching that conclusion, the ALJ gave limited weight to the opinions of Plaintiff's treating physicians and "considerable" weight to the opinions of non-examining and non-treating physicians. The ALJ was most critical of the opinions offered by Dr. Elmore, expressing concern about the form Dr. Elmore used to offer his opinions and finding that the treating physician's opinions were only partially supported by the medical record, were outside his area of expertise and inconsistent with the findings of the non-examining physicians. Tr. 23. The ALJ did not mention that the opinions of the non-examining experts on which he relied were rendered before the September 2011 motor vehicle accident, the December 2011 lumbar spine MRI and subsequent diagnosis of lumbar stenosis with nerve impingement.

Following the issuance of the ALJ's decision and during the Appeals Council review process, Plaintiff presented a second and more elaborate set of opinions from Dr. James to the Appeals Council. Tr. 2; Dkt. No. 30-2. This second opinion of Dr. James was issued on June 19, 2013, just three months after the ALJ decision, and included many of the same diagnoses he had mentioned in his September 6, 2012 report. He provided opinions regarding Plaintiff's prognosis concerning his lumbar stenosis ("fair") and noted the claimant's primary symptoms as right leg pain and low back pain. Dkt. No. 30-2 at 1, 2. Dr. James placed Plaintiff's pain level at seven out of ten and stated he could not sit or stand longer than two hours per eight hour day. *Id.* at 3. In support of his opinions, Dr. James referenced various diagnostic studies, including the

-8-

December 2011 MRI, all which had been performed prior to the March 2013 decision of the ALJ. *Id.* at 2. Dr. James indicated that this opinion was reporting the claimant's baseline "now," on June 19, 2013. Like Dr. James' earlier opinion, the more detailed opinion of June 19, 2013 would limit Plaintiff to sedentary or less than sedentary work.

The Appeals Council acknowledged receiving the June 2013 report of Dr. James but declined to consider it because it concerned information about a "later time" and not whether the claimant was disabled on March 6, 2013, the date of the ALJ decision. Tr. 2. Plaintiff was told to file another disability claim if he wished to have this opinion considered, and the Appeals Council returned the second opinion of Dr. James to the claimant. *Id.* The second Dr. James opinion was, thus, not in the record, and the Court obtained access it only because the claimant attached it to his appeal brief. Dkt. No. 30-2. Following the decision of the Appeals Council denying review, Plaintiff timely filed an appeal with this Court.

## Discussion

### A.    The ALJ failed to weigh the opinions of the various experts pursuant to the standards of the Treating Physician Rule.

A basic premise of the Treating Physician Rule is that all medical opinions will be weighed pursuant to a fixed set of standards which provide considerable deference and preference to the opinions of treating and examining physicians over non-treating and non-examining physicians. § 404.1527(c); SSR 96-2P, 1996 WL 374188 at *4 (1996) ("Treating sources medical opinions are . . . entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 . . . . "). Moreover, the Commissioner pledges to scrutinize the opinions of non-examining physicians to determine the degree to which these

-9-

opinions "consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources." § 404.1527(c)(3). When the opinion of a treating physician is not credited, the ALJ must "give good reasons . . . for the weight given to a treating source's medical opinion(s)." 1996 WL 374188 at *5.

A review of the ALJ's decision concerning his evaluation of the opinions of Plaintiff's treating physicians indicates he made no reference to the standards of the Treating Physician Rule and failed to address such critical issues as treating relationship, examining relationship, and consistency. Tr. 23. The ALJ essentially bought in their entirety the opinions of the non-examining physicians without reference to the standards of the Treating Physician Rule and failed to note that these opinions predated the diagnosis of Plaintiff's moderate to severe spinal stenosis with nerve impingement, a major factor in Dr. James' later opinions.

The ALJ's rejection of the September 2013 opinions of Dr. James, Plaintiff's treating internal medicine physician, is also troubling and include questionable bases that hardly reflect "good reasons" to reject those opinions. First, the ALJ appears dissatisfied with the form Dr. James utilized to offer his opinions. Tr. 23. Second, the ALJ found that Dr. James' opinions were "outside his area of expertise," which seems to the Court a fairly dubious argument to make regarding a board certified internal medicine physician whose area of practice is the general medical management of adult patients. *Id.* Third, the casual reference to Dr. James' opinions being only "partially supported" by the medical record fails to note the highly probative finding of spinal cord stenosis and nerve impingement on the December 2011 lumbar spine MRI, commonly considered the gold standard for diagnosing spinal cord pathology.

In sum, the ALJ's failure to consider and weigh the opinions of the various medical

-10-

experts pursuant to the Treating Physician Rule mandates reversal of the Commissioner's

decision. On remand, the opinions of all medical providers should be evaluated pursuant to the

Treating Physician Rule, and the failure of any expert to review and consider the full medical

record should be noted and weighed against that opinion should the incompleteness of the review

be material to evaluating the Plaintiff's impairments.

> **B.**     **The failure of any fact finder to consider Dr. James' opinions set forth in his June 2013 report after submission to the Appeals Council violates the Fourth Circuit's requirements set forth in *Meyer* and *Bird*.**

The Social Security Administration allows claimants after an adverse decision of the ALJ

to provide "new and material" evidence for the first time to the Appeals Council. The Fourth

Circuit held in *Meyer* that to the extent the newly offered opinion is inconsistent with opinions

credited by the ALJ, a fact finder must consider and weigh the new opinion evidence and

reconcile the new evidence with other evidence in the record. 662 F.3d at 707. In this matter,

Dr. James' June 2013 opinion report reached the same diagnostic conclusions as his September

2012 report but provided greater detail and substance to support that diagnosis. This greater

evidentiary support contained in the June 2013 opinion report clearly constitutes "new and

material" evidence that under *Meyer* should have been considered prior to a final decision by the

Commissioner.

The Appeals Council rejected the June 2013 report of Dr. James because it allegedly

applied only to a later time period, presumably after the March 6, 2013 decision of the ALJ. Tr.

2. But consideration of the newly submitted material does not depend on the date the record was

prepared or whether or not the opinions are explicitly made retrospective. Instead, as the Fourth

Circuit explained in *Bird*, the critical issue is whether there is linkage between the claimant's

medical condition during the relevant time period and this new opinion so that it may corroborate earlier and progressive degeneration of the claimant's condition. 699 F.3d at 341. The June 2013 report clearly relies on diagnostic studies made during the relevant time period and closely tracks earlier diagnostic conclusions reached by Dr. James in the September 2012 report. The fact that this second report is more detailed and substantive would tend to support opinions discredited by the ALJ and bring into question opinions and conclusions credited by the ALJ. In short, the June 2013 report of Dr. James was material, and it was error by the Appeals Council or any other agency fact finder not to consider, weigh and reconcile that new evidence as mandated by *Meyer*.

The Magistrate Judge observed that he was unable to consider the June 2013 report of Dr. James because it was returned to the Plaintiff by the Appeals Council and not made part of the record. Dkt. No. 42 at 16. The Court finds that the agency erred in not making this timely submission part of the record and consideration of the report by the District Court is, therefore, completely proper. In the alternative, the Court could consider the June 2013 report "new evidence" for which there was "good cause" (the agency's error in returning the document timely submitted to the Appeals Council) for its absence in the record. Under such circumstances, remand by the District Court to consider the "new evidence" is proper. *Melkonyan v. Sullivan*, 501 U.S. 89, 100-102 (1991). Under either analysis, reversal of the decision of the Commissioner is necessary so that consideration of the June 2013 report of Dr. James can be considered, reviewed and weighed by the agency fact finder.

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the

-12-

Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion

pursuant to Sentence Four of 42 U.S.C. § 405(g).

      AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

December 2?, 2014
Charleston, South Carolina